UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Angela Remmick,                                    File No. 25-cv-1951 (ECT/LIB)

      Plaintiff,

v.                                                 **OPINION AND ORDER**

Brunswick Corporation, *also known as*
Mercury Marine, and Dillon Remmick,

      Defendants.

Nathan H. Bjerke and Charles D. Slane, TSR Injury Law, Bloomington, MN, for Plaintiff
Angela Remmick.

Daniel J. Connolly and Anthony W. Finnell, Jr., Faegre Drinker Biddle & Reath LLP,
Minneapolis, MN, for Defendant Brunswick Corporation.

Gregory J. Duncan and Michael Joseph Vetter, Jr., Arthur, Chapman, Kettering, Smetak &
Pikala, P.A., Minneapolis, MN, for Defendant Dillon Remmick.

This case arises from a boating accident. Defendant Dillon Remmick lost control
of his pontoon and crashed into a dock where his wife, Angela Remmick, was sitting.
Angela suffered severe injuries. She brought this case in Minnesota state court against the
manufacturer of the boat's motor, Brunswick Corporation, and Dillon. Angela and Dillon
are Minnesota citizens. Brunswick is not.

Contending Dillon was fraudulently joined, Brunswick removed the case on
diversity grounds and moved for Dillon's dismissal. The motion will be granted. Dillon's
presence as a party is proper if there is a reasonable basis in fact and law to predict that
Minnesota law might impose liability on him. There is not. Even under the

plaintiff-friendly fraudulent-joinder standards, Angela has not alleged facts making it reasonable to infer that Mr. Remmick might be liable for negligence.

I[1]

On June 17, 2022, Dillon and Angela were at Gull Lake in Brainerd, Minnesota. Compl. [ECF No. 2-1] ¶ 9. Dillon was driving a pontoon boat to a dock where Angela was sitting, her legs dangling off the dock's edge. *Id.* ¶¶ 10, 19. The boat was outfitted with an engine designed, manufactured, and sold by Brunswick. *Id.* ¶¶ 5, 7–8.

As the boat approached the dock, Dillon slowed the boat down by shifting the engine into neutral. *Id.* ¶ 13. As the boat came closer to the dock, Dillon planned to shift the engine into reverse, which would have acted like a brake. *Id.* ¶¶ 13–15. Because of a gasket failure in the idle limiter, however, the engine malfunctioned; it began to idle at a high speed (or "RPMs") and could not be shifted into reverse. *Id.* ¶¶ 16–17, 26. "Mr. Remmick was unable to control the boat and was unable to shift into reverse to slow the boat." *Id.* ¶ 17. The boat hit the dock, and the collision severely injured Angela's legs. *Id.* ¶¶ 19–22.

Angela brought a state-court suit against Brunswick and Dillon. *Id.* ¶¶ 2–6. She claims Brunswick is liable for negligence, *id.* ¶¶ 31–38, and strict products liability, *id.* ¶¶ 39–46, and that Dillon is liable for negligence, *id.* ¶¶ 47–50. Brunswick removed the case to federal court on diversity grounds. *See* ECF No. 2 ¶¶ 12–17; *see* 28 U.S.C.

---

[1]     The background facts are drawn from the operative Complaint and are presumed to be true. *See Filla v. Norfolk S. Ry.*, 336 F.3d 806, 811 (8th Cir. 2003) (requiring the district court to "resolve all facts . . . in the plaintiff's favor" when adjudicating a fraudulent-joinder question).

§§ 1332(a), 1441(b), 1446.  Brunswick was incorporated in Delaware and maintains its

principal place of business in Wisconsin.  Compl. ¶ 3.  The Remmicks are Minnesota

citizens.  *Id.* ¶¶ 1–2.  Unless he is fraudulently joined, Dillon's presence destroys complete

diversity and would warrant remanding the case to Minnesota state district court.

Brunswick has teed up that question by moving to dismiss Dillon.  ECF No. 13.

II

A civil action pending in state court may be removed to federal court by the

defendant when the action could have been filed in federal court originally.  *See* 28 U.S.C.

§ 1441(a).  Remand is required under 28 U.S.C. § 1447(c) "when the district court lacks

subject matter jurisdiction or the removal was procedurally defective."  *St. John v. Int'l*

*Ass'n of Machinists & Aerospace Workers*, 139 F.3d 1214, 1216 (8th Cir. 1998).  The party

who removed the case bears the burden to show federal subject-matter jurisdiction.  *In re*

*Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).

"Fraudulent joinder is an exception to the complete diversity rule."  *Johnson v.*

*Midwest Div. - RBH, LLC*, 88 F.4th 731, 735 (8th Cir. 2023).  "[J]oinder is fraudulent when

there exists no reasonable basis in fact and law supporting a claim against the resident

defendants."  *Filla v. Norfolk S. Ry.*, 336 F.3d 806, 810 (8th Cir. 2003) (quoting *Wiles v.*

*Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002)).  "However, if there is a

'colorable' cause of action—that is, if the state law *might* impose liability on the resident

defendant under the facts alleged—then there is no fraudulent joinder."  *Id.* (footnote

omitted).  A "colorable" claim is one that is "reasonable, but speculative."  *Id.* at 810 n.10.

In other words, it must be "*clear* under governing state law that the complaint does not

3

state a cause of action against the nondiverse defendant." *Id.* at 810 (quoting *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 n.6 (8th Cir. 1977)). As the Eighth Circuit explained in *Filla*,

> the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved. In making such a prediction, the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor.

*Id.* at 811. When uncertain about the state law outcome, courts resolve all doubts in favor of remand. *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007). Relevant here, the Eighth Circuit has found defendants to be fraudulently joined when plaintiffs "offered no factual basis" for a necessary element of the claim. *See Block v. Toyota Motor Corp.*, 665 F.3d 944, 951 (8th Cir. 2011); *see Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1080 (8th Cir. 2021) ("The complaint likewise fails to allege any McDaniel-specific facts related to Henson's protected activity—filing his administrative charge—and thereby does not make a colorable claim that McDaniel retaliated or aided and abetted retaliation against Henson."). If the diverse defendant meets its burden of establishing fraudulent joinder, the district court can "assume jurisdiction over a facially nondiverse case temporarily and . . . dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012) (citing *Block*, 665 F.3d at 951).

In adjudicating a fraudulent-joinder question, courts in the Eighth Circuit may consider "materials beyond the allegations of the Complaint, but only to determine if there

4

is any factual support for [the plaintiff's] claims." *Masepohl v. Am. Tobacco Co.*, 974 F. Supp. 1245, 1250 (D. Minn. 1997) (citing *Banbury v. Omnitrition Int'l, Inc.*, 818 F. Supp. 276, 280 (D. Minn. 1993)); *see Block*, 665 F.3d at 948. Here, Brunswick relies on a report filed by Angela's expert, *see* ECF No. 10 at 9–10; ECF No. 11-1, and Angela relies on an affidavit submitted by her counsel describing the parties' pre-litigation communications, *see* ECF No. 19 at 5; ECF No. 19-2. The expert report will not be considered because it undermines Angela's negligence claim against Dillon. The pre-suit communications will not be considered because they do not add factual content regarding Dillon's conduct or support the negligence claim against him. They just discuss the parties' preliminary positions regarding Dillon's liability.

Here, whether there is arguably a reasonable basis for predicting that Minnesota law might impose liability on Dillon turns on the negligence standard. "Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). Under Minnesota law, a plaintiff alleging negligence must show "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury." *Id.* The focus is on the second (or "breach") element. The parties agree Dillon owed Angela a duty of care and that she was injured. *See* Minn. Stat. § 86B.311, subdiv. 1(1) ("A person may not operate or allow the operation of a watercraft . . . in a careless or heedless manner in disregard of the rights or safety of others."); *Melchert v. Clark*, No. C1-97-1862, 1998 WL 188860, at *2 (Minn. Ct.

App. Apr. 21, 1998) (relying on statute to set the standard of care); Compl. ¶¶ 20–22 (showing photographs of Angela's injured legs).

Here, there is not an arguably reasonable basis for predicting that Minnesota law might impose liability on Dillon. This is so for two fundamental reasons. (1) The Complaint alleges the opposite. It alleges that Dillon acted reasonably in his operation of the pontoon. For example, Dillon operated the boat so that it "slowly approached the dock . . . as he had done many times before." Compl. ¶ 12. He shifted into neutral and planned to shift into reverse, which would have slowed the boat further. *Id.* ¶¶ 13, 15. As the Complaint makes clear, Dillon's actions were consistent with Brunswick's operating instructions. Brunswick instructed operators to shift into neutral, stop there, and let the engine idle before shifting into reverse. *Id.* ¶ 14. Dillon followed that instruction. *Id.* ¶ 16. Because the motor began revving so high, however, he was not able to shift into reverse. *Id.* ¶ 16. For these reasons, the Complaint alleges, Dillon was "unable to control the boat," and it "coast[ed] towards the dock uncontrolled." *Id.* ¶¶ 17–18. (2) Beyond that, the Complaint alleges only legal conclusions regarding Dillon's actions that cannot be accepted as true. *See Block*, 665 F.3d at 950; *Henson*, 3 F.4th at 1080. These include that Dillon "failed to use reasonable care in his operation of the subject pontoon"; that his conduct "constitutes negligence that was a substantial factor in causing the incident and [Angela's] injuries"; and that Dillon "is liable for its [sic] negligence and for the injuries to [Angela] that were directly and proximately caused by [his] negligence." Compl. ¶¶ 48–50. From these allegations, it is not reasonable to infer that Dillon acted in a careless or

heedless manner in disregard of Angela's rights or safety.  On the face of the Complaint, in other words, Dillon is not possibly negligent.

Angela advances essentially three arguments to support Dillon's joinder, but none is convincing.  First, she argues that the cases Brunswick relied on are distinguishable because they all involved a failure to adequately plead "factual dependent duties."  ECF No. 19 at 3 (first citing *Block*, 665 F.3d at 948; then citing *Henson*, 3 F.4th 1075; and then citing *Lane v. Century Int'l Arms, Inc.*, No. 22-cv-135 (WMW/LIB), 2022 WL 17721508 (D. Minn. Dec. 15, 2022)).  Put another way, in *Block*, *Lane*, and *Henson*, the non-diverse defendant could not be liable unless a certain exception applied: in *Block* and *Lane*, that the nonmanufacturer had knowledge of the product's defect; and in *Henson*, that the supervisor directly oversaw or was actively involved in employment discrimination.  *See Block*, 665 F.3d at 948–50; *Lane*, 2022 WL 17721508, at *3–4; *Henson*, 3 F.4th at 1079–80.  The problem is these cases give no reason to think this distinction matters, and other Eighth Circuit precedent rejects it, if implicitly.  In *Wivell v. Wells Fargo Bank, N.A.*, the plaintiffs fraudulently joined a defendant trustee on a breach of fiduciary duty claim. 773 F.3d 887, 894 (8th Cir. 2014).  Though Missouri law recognized the defendant trustee's fiduciary relationship to the plaintiffs and corresponding duties, the plaintiffs' factual allegations did not establish breach.  *Id.*  The absence of those allegations meant there was "no reasonable basis in Missouri law" to impose liability on the trustee.  *Id.*  That is what we have here.

Second, at the hearing, Angela argued that *Block*, *Lane*, and *Henson* relied on pleading standards because the courts were analyzing Rule 12(b)(6) motions.  Since this

case is not in that posture, the Rule 12(b)(6) reasoning should be ignored.  This argument

mischaracterizes these cases.  In *Henson*, the non-diverse defendant moved to dismiss

under Rule 12(b)(6), but the district court and the Eighth Circuit analyzed the issue under

fraudulent-joinder standards.  *See* Order at 3–4, *Henson v. Union Pac. R.R. Co.*, No. 19-cv-

00082-CV-W-GAF (W.D. Mo. Apr. 3, 2019), ECF No. 19; *Henson*, 3 F.4th at 1079.  There,

the plaintiff failed to allege facts that, taken as true, showed the non-diverse defendant

might be liable for aiding and abetting discrimination and retaliation.  *See id.*  The other

allegations were "broad" and "conclusory," and so "insufficient to state a claim against

him."  *Id.* at 1080.  While the court drew on Rule 12(b)(6) language, in the end, it

determined that "[d]ismissal *on the basis of fraudulent joinder* was therefore proper."  *Id.*

(emphasis added).  *Block* and *Lane* are more direct: "In order to establish fraudulent

joinder, the defendant must 'do more than merely prove that the plaintiff's claim should be

dismissed pursuant to a Rule 12(b)(6) motion.'"  *Block*, 665 F.3d at 948 (quoting *Knudson*

*v. Sys. Painters, Inc.*, 634 F.3d 968, 980 (8th Cir. 2011)); *accord Lane*, 2022 WL 17721508,

at *2.

Third, Angela argues that the negligence action against Dillon would survive a

motion to dismiss under Minnesota's notice-pleading standard, so he should not be

dismissed as fraudulently joined.  ECF No. 19 at 4 (citing *Halva v. Minn. State Colls. &*

*Univs.*, 953 N.W.2d 496 (Minn. 2021)).  "Though some federal courts answer fraudulent

joinder, at least in part, by comparing complaints against state dismissal standards, that

seems unnecessary and perhaps improper."  *Klein as Tr. for Stanback v. Menard, Inc.*,

No. 24-cv-2362 (ECT/JFD), 2024 WL 4880384, at *5 n.5 (D. Minn. Nov. 25, 2024) (citing

*e.g.*, *Hazelwood v. S Serv., LLC*, No. 3:19-cv-105-RGJ, 2020 WL 13543882, at \*2 (W.D. Ky. Feb. 13, 2020)). Instead, "[t]he Eighth Circuit's fraudulent-joinder rules establish the standard against which to assess [Angela's] claim[] against" Dillon. *Id.* Under those rules, conclusory allegations do not create a reasonable basis to predict the imposition of liability under Minnesota law. *Block*, 665 F.3d at 950; *Henson*, 3 F.4th at 1080.[2]

---

[2]   Though the Minnesota Supreme Court abandoned interspousal tort immunity, it cautions courts to watch for collusion when one spouse sues the other. *See Beaudette v. Frana*, 173 N.W.2d 416, 419–20 (Minn. 1969). "Collusion in making spurious claims is an undeniable temptation where a member of the family is insured," as "[a]n award to a wronged spouse upon a genuine claim may actually inure to the benefit of the wrongdoing spouse." *Id.* at 419. "However, instead of saddling such suits with a presumption of fraud *ab initio*, we have trusted the judicial process to detect and dismiss collusive actions." *Nelson v. Nelson*, 283 N.W.2d 375, 379 (Minn. 1979). Drawing from a related context, the Minnesota Supreme Court notes that sees "no impropriety . . . where the [insurance] carrier is the real party in interest." *Balts v. Balts*, 142 N.W.2d 66, 73 (Minn. 1966) (abrogating immunity for children's torts against their parents). Here, alertness to this issue seems warranted. First, Dillon is insured. ECF No. 19-2 at 1–2. His insurance carrier accepted the tender of defense and appointed his counsel. *Id.* at 1. Should Dillon be found liable, Angela would recover from his insurance, which "may actually inure to the benefit of the wrongdoing spouse." *Beaudette*, 173 N.W.2d at 419. Second, Dillon has not moved to dismiss or otherwise opposed the suit. That's unusual in fraudulent-joinder cases in district courts in this Circuit. *See, e.g.*, *Henson*, 3 F.4th at 1080 (non-diverse defendant moved to dismiss); *Lane*, 2022 WL 17721508, at \*1 (same); *Block v. Toyota Motor Corp.*, Nos. 10-cv-2802 & 10-cv-2803 (ADM/AJB), 2010 WL 5422555, at \*1 (D. Minn. Dec. 23, 2010) (non-diverse defendant opposed motion to remand); *Filla*, 336 F.3d at 810 (same); *Johnson v. Midwest Div. – RBH, LLC*, No. 4:20-CV-00728-BCW, 2021 WL 5544763, at \*1 (W.D. Mo. Jan. 11, 2021) (same). Given this *laissez-faire* approach, it's reasonable to ask whether the insurance carrier is the "real party in interest." *Balts*, 142 N.W.2d at 73. Third, Dillon's Answer claims he is without sufficient knowledge or information to admit many allegations in the complaint, including that he was on the lake that day, that he was operating the pontoon, that he slowly approached the dock, and that the pontoon coasted toward the dock uncontrolled. *See* Compl. ¶¶ 9–10, 12, 18; ECF No. 5 ¶ 3. As Brunswick points out, it's difficult to believe Dillon lacks this knowledge. ECF No. 10 at 12 n.3. Because Dillon will be dismissed as fraudulently joined, however, it is not necessary to determine whether the claim against him is dismissal-worthy for this separate reason.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS**

**ORDERED THAT**:

1.      Defendant Brunswick Corporation's Motion to Dismiss Dillon Remmick as

a Fraudulently Joined Defendant [ECF No. 13] is **GRANTED**.

2.      All claims against Defendant Dillon Remmick are **DISMISSED**

**WITHOUT PREJUDICE**.


Dated:  September 29, 2025                          s/ Eric C. Tostrud
                                                   Eric C. Tostrud
                                                   United States District Court

10